UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOVON YANCEY,<br><br>        Plaintiff,<br><br>    v.<br><br>CCFI COMPANIES, LLC,<br><br>        Defendant. | No. 2:24-cv-02187-DAD-JDP<br><br>ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION<br><br>(Doc. No. 18) |

This matter is before the court on defendant's motion to compel arbitration. (Doc. No. 18.) On February 4, 2025, the pending motion was taken under submission on the papers pursuant to Local Rule 230(g). (Doc. No. 26.) For the reasons explained below, the court will grant defendant's motion.

**BACKGROUND**

Plaintiff, Jovon Yancey, brings this wage and hour class action against defendant CCFI Companies, LLC.[1] (Doc. No. 1 at 22.) Based upon the allegations of his complaints, plaintiff asserts ten claims arising under California state law and one claim for violation of the Fair Credit

---

[1] This action is a consolidation of plaintiff's class action brought against defendant, which was removed to this court on August 14, 2024 and assigned Case No. 2:24-cv-02187-DAD-JDP (lead case), and plaintiff's Private Attorneys General Act action brought against defendant, which was removed to this court on August 29, 2024 and has been assigned Case No. 2:24-cv-02358-DAD-JDP (member case).

1

1  Reporting Act and seeks civil penalties for alleged violations of the Labor Code under
2  California's Private Attorneys General Act ("PAGA").  (*Id*. at 22–49.)  Defendant moves to
3  compel arbitration of plaintiff's claims based upon its Mutual Dispute Arbitration Agreement
4  ("MDAA"), which plaintiff was required to sign as part of defendant's pre-employment
5  onboarding process.  (Doc. No. 18-2 at 2, 5–9.)

   Defendant filed its pending motion to compel arbitration and an accompanying request for judicial notice on January 7, 2025.  (Doc. Nos. 18, 19.)  On January 21, 2025, plaintiff filed his opposition and an accompanying request for judicial notice, and on January 23, 2025, plaintiff filed a notice of supplemental authority alerting the court to the district court's decision in *Ruiz v. S. Tire Mart, LLC*, No. 2:24-cv-03429-SPG-E (C.D. Cal. Jan. 22, 2025).[2]  (Doc. Nos. 22, 22-3, 23.)  On January 31, 2025, defendant filed a reply in support of its motion.  (Doc. No. 25.)

## LEGAL STANDARD

A written provision in any contract evidencing a transaction involving commerce to settle a dispute by arbitration is subject to the Federal Arbitration Act ("FAA").  9 U.S.C. § 2.  There is

---

[2]  The court declines to take judicial notice of either of the documents submitted by the parties. Defendant requests that the court take judicial notice of the class action complaint filed June 14, 2023 in the Alameda County Superior Court in the matter of *Mahogany Lovette v. CCFI Companies, LLC*, Case No. 23-cv-036028, which was subsequently removed to the United States District Court of the Northern District of California and assigned case number 3:23-cv-03755-JSC.  (Doc. No. 19.)  Plaintiff objects, arguing that the *Lovette* complaint is neither authenticated nor relevant.  (Doc. No. 22-2.)  The court has reviewed the district court's order granting the defendant's motion to compel arbitration in *Lovette*, 2023 WL 8813525, at *1–4 (N.D. Cal. Dec. 20, 2023), but does not find judicial notice of the complaint filed in that matter to be necessary to resolving defendant's motion in this matter.  In connection with his opposition, plaintiff also asks that the court take judicial notice of defendant's Statement of Information filed with the California Secretary of State, (Doc. No. 22-3), seemingly in support of his argument that defendant is a different entity than the one named as his employer in the MDAA (Doc. No. 22 at 7–8).  Because that fact is uncontested by defendant and plaintiff has not explained how the information contained within the Statement of Information is relevant to the court's analysis, the court will also decline to take judicial notice of this public record.  *See Morales v. Anastassiou*, No. 2:20-cv-00704-DAD-KJN (PC), 2023 WL 2597548, at *1 n.1 (E.D. Cal. Mar. 22, 2023) (holding that "the magistrate judge did not err in declining to take judicial notice of these documents because plaintiff did not show that the documents were relevant to the court's analysis of defendant's motion for summary judgment"); *Garcia v. Sweet 2017, LLC*, No. 2:20-cv-02181-JAM-DB, 2021 WL 2417139, at *2 (E.D. Cal. June 14, 2021) (declining to take judicial notice of irrelevant exhibits that were otherwise proper subjects of judicial notice).

1   generally a "liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 584
2   U.S. 497, 504 (2018). The FAA confers on the parties involved the right to obtain an order
3   directing that arbitration proceed in the manner provided for in a contract between them. 9
4   U.S.C. § 4. In considering a motion to compel arbitration, the "court's role under the [FAA] . . .
5   is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does,
6   (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic*
7   *Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The party seeking to compel arbitration bears the
8   burden of proving by a preponderance of the evidence the existence of an agreement to arbitrate.
9   *Godun v. JustAnswer LLC*, 135 F.4th 699, 708 (9th Cir. 2025); *Ashbey v. Archstone Prop. Mgmt.,*
10  *Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015); *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565
11  (9th Cir. 2014) (citing *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996)).
12  "When deciding a motion to compel arbitration, a district court must treat the facts as they would
13  when ruling on a motion for summary judgment, construing all facts and reasonable inferences
14  that can be drawn from those facts in a light most favorable to the non-moving party." *Turner v.*
15  *Tesla, Inc.*, 686 F. Supp. 3d 917, 922 (N.D. Cal. 2023) (internal quotation marks and citation
16  omitted); *see also Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) ("The
17  summary judgment standard is appropriate because the district court's order compelling
18  arbitration is in effect a summary disposition of the issue of whether or not there had been a
19  meeting of the minds on the agreement to arbitrate.") (internal quotation marks and citation
20  omitted).

21                                **ANALYSIS**

22  **A.      Whether an Agreement to Arbitrate Was Formed**

23      "First, a court must resolve any challenge that an agreement to arbitrate was never formed,
24  even in the presence of a delegation clause." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th
25  1021, 1030 (9th Cir. 2022). "That principle follows from the fundamental premise that arbitration
26  is strictly a matter of consent." *Id.* (internal quotation marks and citation omitted). As to
27  formation, plaintiff first argues that he did not agree to arbitrate because the MDAA names his
28  "Employer" as the entity "Checksmart Financial, LLC," not defendant CCFI Companies, LLC.

                                               3

(Doc. No. 22 at 11.) Plaintiff also challenges the validity of his electronic signature, arguing that his name and signature are not sufficiently connected to the MDAA and that there is no "electronic signature trail or other coding indicating that the provided electronic signature purports to apply to the Agreement." (*Id.*)

        1.     <u>Defendant's Name in the MDAA</u>

Plaintiff argues in one sentence that the parties did not agree to arbitrate their claims because the MDAA is an agreement between plaintiff and the entity "Checksmart Financial, LLC," not defendant. (Doc. No. 22 at 11.) In reply, defendant acknowledges that the MDAA identifies "Checksmart Financial, LLC" as the "Employer." (Doc. No. 25 at 7.) Defendant explains that in December 2017, the entity "Checksmart Financial, LLC" changed its name to "CCFI, LLC," and subsequently in December 2021, CCFI, LLC executed a transfer agreement assigning all employment relationships from CCFI, LLC to defendant, CCFI Companies, LLC. (*Id.* at 6.) Defendant does not explain why, shortly before plaintiff began working as an employee for defendant in November 2022, plaintiff was presented with an MDAA naming his employer as "Checksmart Financial, LLC," when that entity's name change had occurred almost five years earlier. However, defendant argues that regardless of this seeming error, the "plain words of the MDAA show a mutual contract between an employee and his employer and specify that the two will arbitrate claims arising from that employment relationship." (Doc. No. 25 at 7.)

"In California a 'contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.'" *Gurman, Trs. of Helen Gurman 1993 Tr. v. Protective Life Ins. Co.*, No. 4:23-cv-02157-YGR, 2024 WL 5505737, at *3 (N.D. Cal. Oct. 2, 2024) (citing Cal. Civ. Code § 1636). "When, through fraud, mistake, or accident, a written contract fails to express the real intention of the parties, such intention is to be regarded, and the erroneous parts of the writing disregarded." Cal. Civ. Code § 1640. "The doctrine of mistake customarily involves such errors as the nature of the transaction, the identity of the parties, the identity of the things to which the contract relates, or the occurrence of collateral happenings." *Pattern Design LLC v. We are Sechey Inc.*, No. 24-cv-

/////

4

02604-CRB, 2024 WL 4369668, at *3 (N.D. Cal. Oct. 1, 2024) (citing *Odorizzi v. Bloomfield Sch. Dist.*, 246 Cal. App. 2d 123, 130 (1966)).

"Although 'the intention of the parties is to be ascertained from the writing alone, if possible' ([Cal. Civ. Code] § 1639), '[a] contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates' ([Cal. Civ. Code] § 1647)." *Townsend v. Cordova*, No. B323613, 2024 WL 2970880, at *5 (Cal. Ct. App. June 13, 2024)[3] (citing *Hess v. Ford Motor Co,* 27 Cal.4th 516, 524 (2002)). "[C]ourts must preliminarily consider all credible evidence offered to prove the intention of the parties so that courts can place themselves 'in the same situation in which the parties found themselves at the time of contracting.'" *Oakland-Alameda Cnty. Coliseum Auth. v. Golden State Warriors, LLC*, 53 Cal. App. 5th 807, 817 (2020) (quoting *Pac. Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 40 (1968)).

Here, the MDAA mistakenly labels plaintiff's employer as Checksmart Financial, LLC rather than CCFI Companies, LLC. However, the language of the MDAA clearly evinces an intention between employer and employee to arbitrate claims against each other, as it denotes an "Employee" and an "Employer" as the relevant parties, addresses potential legal claims that could arise out of the Employee's employment application, employment, and employment termination, refers to relevant statutes such as the California Fair Employment and Housing Act, the Fair Labor Standards Act, and the Equal Pay Act, and makes reference to labor-related administrative agencies such as the Equal Employment Opportunity Commission, the United States Department of Labor, and the National Labor Relations Board. (Doc. No. 18-2 at 5–10.) Beyond the text of the MDAA, defendant has submitted the declaration of its vice president of compensation, Jennifer Pazzelli, who declares that plaintiff's employment offer letter stated that the finalization of plaintiff's hiring as defendant's employee was contingent upon his execution of the MDAA, (Doc. No. 24 at ¶ 17), suggesting that both parties understood the MDAA to apply to plaintiff's

---

[3] The court may consider unpublished California Court of Appeal decisions. *See Magadia v. Wal-Mart Assocs., Inc*., 999 F.3d 668, 681 n.12 (9th Cir. 2021) ("Although these [California Court of Appeal] decisions are unpublished with no precedential value, we may still consider them to interpret California law.").

5

1 employment with defendant. Defendant has also submitted additional paperwork that plaintiff
2 signed during his onboarding process in which his employer is referred to as being "CCFI,"
3 further suggesting that the MDAA was intended to apply to defendant. (Doc. No. 24 at 20–21.)
4 Defendant also observes that plaintiff has submitted no declaration of his own and that there is
5 thus no evidence before the court suggesting that when plaintiff signed the MDAA, he did not
6 intend to enter into an arbitration agreement with defendant, and instead intended to enter into
7 such an agreement with the entity Checksmart Financial, LLC, who was not his employer, but
8 was labeled in the MDAA as his employer. (Doc. No. 25 at 8.)

9 Based on the language of the MDAA itself and the evidence before the court regarding the
10 circumstances under which it was signed, the court concludes that at the time of contracting the
11 parties intended to arbitrate claims between plaintiff and his employer. Accordingly, the court
12 rejects plaintiff's argument that he did not agree to arbitrate with defendant CCFI Companies,
13 LLC because the MDAA labeled his employer as Checksmart Financial, LLC. *See Pattern*
14 *Design LLC*, 2024 WL 4369668, at *1 (denying the defendant's motion to dismiss the plaintiff's
15 breach of contract claim where the contract at issue was executed by the plaintiff and a misnamed
16 "unincorporated business entity" that "is not an actual entity"); *Perry v. Select Portfolio*
17 *Servicing, et al.,* No. 15-cv-03629-RS, 2016 WL 3078839, at *1 (N.D. Cal. Jan. 8, 2016)
18 (concluding there was no basis to find the relevant "note and deed of trust void simply because
19 the lender was identified by its trade name [America's Wholesale Lender] instead of its formal
20 legal name [Countrywide Home Loans]"); *Indian Ref. Co. v. Royal Oil Co*., 102 Cal. App. 710,
21 712 (1929) ("The misnomer of a corporation in any written instrument does not invalidate the
22 instrument, if it can be reasonably ascertained from it what corporation is intended."); *Budd v.*
23 *Joseph Zukin Blouses, Inc*. 90 Cal. App. 447, 448–49 (1928) (holding that the trial court properly
24 rejected a challenge to an instrument based on incorrect name); *see also FT Travel--New York,*
25 *LLC v. Your Travel Ctr., Inc*., 112 F. Supp. 3d 1063, 1084 (C.D. Cal. 2015) (applying New York
26 state contract law in concluding that "absent an allegation that, at the time of the contract, a
27 plaintiff was under an actual misapprehension . . . the Court will not permit the [parties] to
28 capitalize on [a] technical naming error in contravention of the parties' evident intentions").

### 2. Validity of the Electronic Signature

Plaintiff also challenges the formation of any agreement between the parties by arguing that his name and signature are not sufficiently connected to the MDAA and that defendant has not adequately demonstrated that plaintiff "ever actually agreed to arbitration." (Doc. No. 22 at 11–12.) In response, defendant observes that plaintiff has not produced any evidence challenging the authenticity of the MDAA, and even if he had, defendant has presented sufficient evidence to establish that plaintiff signed it. (Doc. No. 25 at 8–11.)

As noted above, defendant bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence. *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023) (citing *Knutson*, 771 F.3d at 565). "When determining whether parties have agreed to submit to arbitration, courts apply state-law principles of contract formation and interpretation." *Suski v. Coinbase, Inc.*, 55 F.4th 1227, 1230 (9th Cir. 2022) (citing *In re Holl*, 925 F.3d 1076, 1083 (9th Cir. 2019)). "Under California law, '[t]he party seeking arbitration can meet its initial burden by attaching to the petition a copy of the arbitration agreement purporting to bear the respondent's signature.'" *Jean-Baptiste v. Cal. Coast Credit Union*, No. 23-cv-00533-LL-VET, 2024 WL 460241, at *2 (S.D. Cal. Feb. 6, 2024) (quoting *Bannister v. Marinidence Opco, LLC*, 64 Cal. App. 5th 541, 543 (2021), *as modified* (May 21, 2021)). "If the movant bears its initial burden, the burden shifts to the party opposing arbitration to identify a factual dispute as to the agreement's existence—in this instance, by disputing the authenticity of their signatures." *Iyere v. Wise Auto Grp.*, 87 Cal. App. 5th 747, 755 (2023), *review denied* (Apr. 26, 2023). "To bear this burden, the arbitration opponent must offer admissible evidence creating a factual dispute as to the authenticity of their signatures." *Id.* Once "the validity of the signature is challenged, the [moving] party must 'establish by a preponderance of the evidence that the signature was authentic.'" *Jean-Baptiste*, 2024 WL 460241, at *2 (quoting *Espejo v. S. Cal. Permanente Med. Grp.*, 246 Cal. App. 4th 1047, 1060 (2016)); *see also Ruiz v. Moss Bros. Auto Grp.*, 232 Cal. App. 4th 836, 844 (2014) (acknowledging that the "burden of authenticating an electronic signature is not great").

/////

1    Here, defendant has met its initial burden to demonstrate the existence of an agreement to
2    arbitrate by submitting the declaration of defendant's Chief People Officer Donna Desilets (Doc.
3    No. 18-2 at 1–3) and attaching a copy of the MDAA reflecting plaintiff's electronic signature (*id.*
4    at 4–10). *See Jean-Baptiste*, 2024 WL 460241, at *2 (finding that the "[d]efendant met its initial
5    burden to show that a valid arbitration agreement exists by proffering a Member Services Request
6    [] form with Plaintiff's apparent handwritten signature [] and a copy of Defendant's current
7    Membership and Account Agreement [] form which includes an arbitration provision"); *Brooks v.*
8    *Greystar Real Est. Partners, LLC*, No. 23-cv-01729-LL-VET, 2024 WL 3489205, at *4 (S.D.
9    Cal. July 19, 2024) ("In this case, Defendants met their initial burden to show that a valid
10   arbitration agreement exists by providing a copy of McGill's signed Lease with McGill's
11   electronic signature."), *motion to certify appeal denied*, 2025 WL 958598 (S.D. Cal. Mar. 31,
12   2025); *see also Cortez v. Cambridge Real Est. Servs., Inc.*, No. 22-cv-07332-HSG, 2023 WL
13   4534946, at *3 (N.D. Cal. June 16, 2023) ("The party moving to compel arbitration may meet its
14   initial burden of proving that an agreement exists by attaching to the petition a copy of the
15   arbitration agreement purporting to bear the respondent's signature.") (internal quotations and
16   citation omitted).  Therefore, the burden shifts here to plaintiff to offer evidence creating a factual
17   dispute as to the MDAA's existence or the authenticity of his signature.  *See Tercero v.*
18   *Sacramento Logistics LLC*, No. 2:24-cv-00953-DC-JDP, 2025 WL 43125, at *3 (E.D. Cal. Jan. 7,
19   2025) (describing the burden-shifting framework).

20   Plaintiff offers no such evidence in his opposition to the pending motion.  Rather, plaintiff
21   merely states that defendant has submitted insufficient evidence that he signed the MDAA, and
22   points to the lack of "electronic signature trail or other coding indicating that the provided
23   electronic signature purports to apply to the Agreement."  (Doc. No. 22 at 11.)  Plaintiff does not,
24   however, come forward with evidence that, for example, his login information, which was used to
25   access defendant's HR system, was shared with others, or that he was unable to access the system
26   on the date that the MDAA was purportedly signed, or any other evidence suggesting that he did
27   not sign the MDAA.  In fact, plaintiff never even alleges that he did not sign the MDAA, nor does
28   he state that he has no memory of doing so.  Accordingly, plaintiff has clearly not carried his

8

burden of challenging the authenticity of his electronic signature. *See Duval v. Costco Wholesale Corp.*, No. 22-cv-02338-TSH, 2023 WL 3852694, at *3 (N.D. Cal. June 5, 2023) (finding no "sufficient dispute as to the authenticity of the signature" where the plaintiff "does not actually state that she never signed the Agreement"); *Warren v. Del Taco Rests., Inc.*, No. 18-cv-00082-JGB-SP, 2018 WL 6167937, at *4–5 (C.D. Cal. Apr. 23, 2018) (finding that the "[p]laintiff has not raised a genuine issue of material fact as to whether a valid arbitration agreement exists between the parties" where she "presents no evidence to dispute her ability to access the People Matter system or sign the on-boarding documents other than her general denial of doing so"); *Iyere*, 87 Cal. App. 5th at 756 (finding that the plaintiffs offered no admissible evidence creating a dispute as to the authenticity of their signatures where they simply declared that they did "not recall signing the agreement" and did not know how their signatures were placed on the documents); *Bracamontes v. United Rentals, Inc.*, No. 2:23-cv-02697-DAD-CSK, 2024 WL 1884052, at *4 (E.D. Cal. Apr. 30, 2024) (rejecting the "plaintiff's challenge to the validity of the Arbitration Agreement" where the "plaintiff claims to believe that her digital signature was forged" but "presents no evidence to support this claim").

Even if plaintiff's bare assertions were somehow sufficient to shift the burden back to defendant, the declaration of Jennifer Pazzelli, detailing the unique "username and password that [plaintiff] created" and the steps required to complete an onboarding application in defendant's online HR system, is sufficient to rebut any challenge by plaintiff as to the authenticity of his signature on the MDAA. *See Warren*, 2018 WL 6167937, at *4 (finding the declaration of the defendant's vice president describing how the plaintiff accessed the HR system "using a unique login, and how that login is required to place an electronic signature on a document establishes by a preponderance of the evidence that her electronic signature was authentic"); *Bracamontes*, 2024 WL 1884052, at *4 ("[T]he audit of plaintiff's account activity, the evidence of the steps taken by plaintiff in the online system including placing her electronic signature and more, and defendant's explanation of the secure credentials that plaintiff was required to use in order to log into the online system and place her electronic signature at issue, taken together establish by a preponderance of the evidence that her electronic signature was authentic."). Accordingly, the

court rejects plaintiff's challenge to the validity of his signature on the MDAA. *See Rios v. Cognizant Tech. Sols. U.S. Corp.*, No. 2:25-cv-00251-DAD-CKD, 2025 WL 1684178, at *4 (E.D. Cal. June 16, 2025) (rejecting a similar challenge to an electronic signature by a plaintiff); *Nanavati v. Adecco USA, Inc.*, 99 F. Supp. 3d 1072, 1076 (N.D. Cal. 2015) (concluding that the defendant's declaration, which established in detail the basis for concluding that the plaintiff electronically signed the agreement, easily satisfied the defendant's "low burden to authenticate [the p]laintiff's electronic signature and establish the existence of a valid arbitration agreement" where the plaintiff argued that the defendant had not met this burden but did not challenge the facts set forth in the defendant's declaration).

**B.     Unconscionability**

Plaintiff next argues that the MDAA is unconscionable, both procedurally because it is a contract of adhesion and its governing rules are not properly identified, and substantively in numerous ways, including that it is overbroad in both scope and duration. (Doc. No. 22 at 18–26.) Defendant concedes that the scope and duration of the MDAA may present a "small amount" of unconscionability but argues that issues as to unconscionability have been delegated to the arbitrator under the MDAA and thus cannot be decided by this court. (Doc. No. 25 at 17.) Plaintiff argues that the delegation clause in the MDAA is unenforceable because it conflicts with other provisions appearing in the same agreement. (Doc. No. 22 at 16–18.)

"[P]arties are free to delegate the adjudication of the gateway questions to the arbitrator, so long as they do so 'clearly and unmistakably.'" *Acosta v. Brave Quest Corp.*, 733 F. Supp. 3d 920, 926 (C.D. Cal. 2024) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). "Clear and unmistakable evidence of an agreement to arbitrate arbitrability 'might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do so.'" *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (quoting *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011)). "As a general matter, where one contractual provision indicates that the enforceability of an arbitration provision is to be decided by the arbitrator, but another provision indicates that [a] court might also find provisions in the contract unenforceable, there is no clear and unmistakable delegation of authority to the arbitrator." *Jack*

1  *v. Ring LLC*, 91 Cal. App. 5th 1186, 1197 (2023) (internal citations and quotation marks omitted),

2  *review denied* (Sept. 13, 2023); *see also Ruiz v. S. Tire Mart, LLC*, No. 2:24-cv-03429-SPG-E,

3  2025 WL 2025633, at *11 (C.D. Cal. Jan. 22, 2025) (holding that the parties did not "clearly and

4  unmistakably delegate[] to the arbitrator exclusive authority to decide whether the arbitration

5  provision is valid" where the "arbitration provision point[ed] in two directions on the question

6  whether a court or an arbitrator is to decide the enforceability of the agreement").

   Here, defendant points to Section 6, titled "Applicable Law," of the MDAA for the

   provision that delegates issues of unconscionability to the arbitrator:

> With the exception of claims regarding the validity, scope or enforceability (including unconscionability) of the Class Action Waiver, addressed below, the Parties agree to submit claims to the arbitrator regarding issues of arbitrability, the validity, scope, and enforceability of this Agreement, his or her jurisdiction, as well as any gateway, threshold, or any other challenges to this Agreement, including claims that this Agreement is unconscionable.

(Doc. No. 18-2 at 6.) Plaintiff acknowledges that this provision delegates unconscionability to

the arbitrator, but notes that the provision excepts from delegation claims regarding the Class

Action Waiver. (Doc. No. 22 at 17.) Plaintiff then observes that on the following page of the

MDAA, in Section 9 titled "Class, Collective and Private Attorney General Waivers; Right to Opt

Out," the agreement states:

> (a) There will be no right or authority for any dispute to be brought, heard or arbitrated as a class action ("Class Action Waiver"). The Class Action Waiver shall not be severable from this Agreement in any case in which (1) the dispute is filed as a class action and (2) a civil court of competent jurisdiction finds the Class Action Waiver is unenforceable. In such instances, the class action must be litigated in a civil court of competent jurisdiction.
>
> (b) There will be no right or authority for any dispute to be brought, heard or arbitrated as a collective action ("Collective Action Waiver"). The Collective Action Waiver shall not be severable from this Agreement in any case in which (1) the dispute is filed as a collective action and (2) a civil court of competent jurisdiction finds the Collective Action Waiver is unenforceable. In such instances, the collective action must be litigated in a civil court of competent jurisdiction.
>
> (c) There will be no right or authority for any dispute to be brought, heard or arbitrated as a private attorney general action ("Private Attorney General Waiver"). The Private Attorney General Waiver shall not be severable from this Agreement in any case in which a

11

> civil court of competent jurisdiction finds the Private Attorney General Waiver is unenforceable. In such instances and where the claim is brought as a private attorney general, such private attorney general claim must be litigated in a civil court of competent jurisdiction.
>
> [ . . . ]
>
> Notwithstanding any other clause contained in this Agreement, any claim that all or part of the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is invalid, unenforceable, unconscionable, void or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator.

(Doc. No. 18-2 at 7.)

Plaintiff argues that, according to this later section of the MDAA, a court could find not only the Class Action Waiver, but also the Collective Action Waiver and the Private Attorney General Waiver to be unenforceable, suggesting that challenges to all three of these waivers are not delegated to the arbitrator, in contradiction to Section 6 which indicates that only issues regarding the Class Action Waiver are excepted from delegation. (Doc. No. 22 at 17.) In reply, defendant argues that there is no such contradiction in the MDAA because Section 9.1 simply "describes the full scope of exceptions to the delegation clause" previewed in Section 6. (Doc. No. 25 at 12.) Defendant also argues that any possible confusion in this regard is clarified by the language appearing in Section 9.3, which states that the language of that section governs "[n]otwithstanding any other clause contained in this Agreement." (Doc. No. 18-2 at 7.)

While the court recognizes the seeming discrepancy that plaintiff has identified, any such discrepancy is limited to whether an exception from delegation applies to either one or three specific waivers. However, that no exception from delegation applies to other aspects of the MDAA, such as its arguably problematic duration, scope, or fee-shifting provisions—issues clearly delegated to the arbitrator under the agreement—represents no arguable inconsistency. *Cf. Zuckerman v. Charter Commc'ns, LLC*, No. 24-cv-00128-WQH-BJC, 2024 WL 4871739, at *6–8 (S.D. Cal. Nov. 22, 2024) (finding that "the parties did not clearly and unmistakably delegate arbitrability" where the agreement's delegation clause providing that "all disputes related to the arbitrability of any claim or controversy will be submitted to arbitration" directly conflicted with its severability clause suggesting that the agreement could be "determined to be illegal,

invalid, or unenforceable by any court of competent jurisdiction"). Particularly instructive here is the Ninth Circuit's warning to district courts not to invalidate delegation provisions based on "conflicts [that] are artificial." *Mohamed*, 848 F.3d at 1209. In *Mohamed*, the Ninth Circuit rejected and overturned the district court's conclusion that the arbitration agreement at issue contained an inconsistency affecting its delegation provision, noting that "[t]he clause describing the scope of the arbitration provision was prefaced with '[e]xcept as it otherwise provides,' which eliminated the inconsistency between the general delegation provision and the specific carve-out" at issue. *Id.*; *see also Ortega v. UnitedHealth Group, Inc.*, No. 23-cv-05596-JST, 2024 WL 4495817, at *4 (N.D. Cal. Oct. 15, 2024). Here, the MDAA contains similar language eliminating any inconsistency in Section 9.3, which states that unconscionability as to all three waivers is to be decided by the court "notwithstanding any other clause" in the MDAA, which overrides any conflicting language in Section 6 suggesting that only the Class Action Waiver is excepted from delegation. (Doc. No. 18-2 at 8.) Accordingly, the court concludes that the MDAA clearly and unmistakably delegates questions of arbitrability, including unconscionability, to the arbitrator for all claims except challenges to the class, collective, and PAGA waivers, and this court is "required to enforce [that] agreement[]." *Mohamed*, 848 F.3d at 1209 (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).[4]

**C.     PAGA Waiver**

Plaintiff next argues that the PAGA waiver included in the MDAA is unenforceable and, pursuant to Section 9.3 of the MDAA discussed above, this court is authorized to make that

---

[4] Plaintiff also argues that the delegation clause is procedurally unconscionable, because it "is buried in the middle of section 6 of the Agreement, in a lengthy paragraph in the midst of five (5) pages of single-spaced text containing extensive legalese" and "nothing in the Agreement called Plaintiff's attention to the buried delegation clause, and Plaintiff was not required to sign or initial that provision." (Doc. No. 22 at 16.) Because the court has rejected plaintiff's argument as to any substantive conflict between the MDAA's provisions regarding delegation, the court need not address plaintiff's argument as to procedural unconscionability. *See Gonzales v. Lowes*, No. 2:22-cv-01436-DC-CSK, 2025 WL 408497, at *4 (E.D. Cal. Jan. 29, 2025) ("Plaintiff's failure to show procedural unconscionability forecloses her unconscionability defense under California law, which requires both procedural and substantive unconscionability."); *Tompkins v. 23andMe, Inc.*, 5:13-cv-05682-LHK, 2014 WL 2903752, at *13 (N.D. Cal. Jun. 25, 2014) ("For unconscionability, California requires a showing of both procedural and substantive unconscionability, balanced on a sliding scale.").

13

determination. (Doc. No. 22 at 26–29.) In reply, defendant argues that the PAGA waiver is "valid and enforceable," but if it "is held invalid, then the MDAA expressly requires the Court to sever the PAGA waiver." (Doc. No. 25 at 18.)

In *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348 (2014), the California Supreme Court held that where "an employment agreement compels the waiver of representative claims under the PAGA," it "frustrates the PAGA's objectives" and "is contrary to public policy and unenforceable as a matter of state law." *Id.* at 384. In *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022), the United States Supreme Court explained that this principal rule in *Iskanian* "prevents parties from waiving representative standing to bring PAGA claims in a judicial or arbitral forum," meaning that it prohibits waivers of PAGA claims that are representative "in that they are brought by employees acting as representatives—that is, as agents or proxies—of the State." *Id.* at 648–49.

Here, the MDAA states that "[t]here will be no right or authority for any dispute to be brought, heard or arbitrated as a private attorney general action." (Doc. No. 18-2 at 7.) Plaintiff argues that this broad provision, "with no distinction between individual and representative portions of the PAGA action," is unenforceable. (Doc. No. 22 at 26–27.) In response, defendant argues that a PAGA waiver is invalid if it "entirely prohibits the employee signatory from litigating his PAGA claim" but "[t]hat is not the case here" because the MDAA permitted plaintiff thirty days to opt out of the PAGA waiver provision. (Doc. No. 25 at 17.) This exact argument now advanced by defendant here has been soundly rejected by the Ninth Circuit:

> Uber attempts to distinguish this case from *Iskanian* because drivers were able to opt out of the 2013 Agreement, but its effort is unavailing. Drivers presented with the 2013 Agreement were required to make the decision whether or not to opt out within 30 days of receipt, and *Iskanian* made clear that, while employees "are free to choose whether or not to bring PAGA actions when they are aware of Labor Code violations," it is "contrary to public policy for an employment agreement to eliminate this choice altogether by requiring employees to waive the right to bring a PAGA action before any dispute arises." 173 Cal. Rptr. 3d 289, 327 P.3d at 149. Because the PAGA waiver in the 2013 Agreement required employees to make a decision as to whether or not they would preserve their right to bring PAGA claims before they knew any such claims existed, it is unenforceable under *Iskanian* and *Sakkab* [*v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 427 (9th Cir. 2015)].

14

*Mohamed*, 848 F.3d at 1213.

The PAGA waiver in the MDAA does appear to be a broad provision that waives plaintiff's right to bring any PAGA claim, in any forum, on behalf of plaintiff individually or non-individually. The court agrees with plaintiff that this waiver is therefore unenforceable. *Herman v. Brookdale Emp. Serives LLC*, No. 24-cv-04987-PCP, 2025 WL 306223, at *3 (N.D. Cal. Jan. 27, 2025) ("The agreement also waives Herman's right to bring a representative action under [PAGA]. Although the agreement preserves his right to arbitrate individual PAGA claims, its wholesale waiver of representative PAGA claims is unenforceable as a matter of California state law."); *Murry v. SP Plus Corp.*, No. 2:24-cv-00033-SB-AJR, 2024 WL 4744026, at *1 (C.D. Cal. Mar. 12, 2024) (wherein the parties agreed that the PAGA waiver was invalid and unenforceable because it required the employee to "waive any substantive or procedural rights [he] may have to sue on as a private attorney general" and stated that "no one has authority to construe this Agreement to allow or permit claims brought on behalf of any state or government as a private attorney general"); *DeMarinis v. Heritage Bank of Com.*, 98 Cal. App. 5th 776, 786 (2023) ("We conclude this provision is unenforceable under *Iskanian*'s principal rule, which *Viking River* left undisturbed, because it requires plaintiffs to waive their right to bring any representative PAGA claim in any forum, arbitral or judicial.") (internal citations and quotations marks omitted).

Having found this provision of the MDAA unenforceable, the court turns next to whether it is severable. Plaintiff asserts that it is not and points to sections of the MDAA regarding severability that he argues are contradictory. (Doc. No. 22 at 27.) The MDAA contains the following three relevant provisions:

9.1(c):

> There will be no right or authority for any dispute to be brought, heard or arbitrated as a private attorney general action ("Private Attorney General Waiver"). The Private Attorney General Waiver shall not be severable from this Agreement in any case in which a civil court of competent jurisdiction finds the Private Attorney General Waiver is unenforceable. In such instances and where the claim is brought as a private attorney general, such private attorney general claim must be litigated in a civil court of competent jurisdiction.

15

> 9.4:
>
>> The Class Action Waiver, Collective Action Waiver and Private Attorney General Waiver shall be severable in any case in which the dispute is filed as an individual action and severance is necessary to ensure that the individual action proceeds in arbitration.
>
> 10:
>
>> This Agreement constitutes the complete agreement with regard to dispute resolution. If any provision is found to be void or unenforceable, in whole or in part, the remainder of this Agreement shall not be affected and shall remain valid and in full force and effect to the extent permitted by law. If the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is deemed to be unenforceable, Employer and Employee agree that this Agreement is otherwise silent as to any party's ability to bring a class, collective or representative action in arbitration.

(Doc. No. 18-2 at 7–8.) The court does find these provisions to be lacking in clarity and is particularly troubled by the second sentence of 9.1(c) stating that the waiver is "not severable," which seems to be at odds with the other provisions. However, the Ninth Circuit evaluated almost identical "ambiguous provisions" to those appearing in provisions 9.1(c) and 10 in *Mohamed*. 848 F.3d at 1214. In examining the exact language of Section 9.1(c), which the Ninth Circuit noted was "hardly a model of clarity," the court observed that "the third sentence stated explicitly that PAGA claims are subject to litigation in court, contrary to the district court's conclusion that the PAGA waiver was unseverable." *Id.* The court concluded that "in stating that the PAGA waiver and the arbitration provision are *not* severable" in the second sentence, "the contract provides that, if the PAGA waiver turned out to be invalid, the arbitration provision would also be invalid as to any PAGA representative claim," and thus "while Plaintiffs' PAGA claim must be litigated in court, the PAGA waiver does not invalidate the remainder of the arbitration provision, and it should be enforced according to its terms." *Id.* Accordingly, the Ninth Circuit found that the district court erred in concluding that the invalid PAGA waiver at issue "was unseverable from the remainder of the agreement" and that none of plaintiff's claims could be compelled to arbitration. *Id.*

Moreover, the California Court of Appeal has evaluated an identical provision to Section 9.4 and concluded that such language made clear that the contract "follows *Viking*'s structure by


compelling plaintiffs' PAGA claims to arbitration and requiring the remaining representative claims to be litigated in court." *Piplack v. In-N-Out Burgers*, 88 Cal. App. 5th 1281, 1289, *review dismissed, cause remanded*, 534 P.3d 924 (2023). Accordingly, the state appellate court in *Piplack* concluded that the trial court had incorrectly denied the defendant's motion to compel arbitration after finding the PAGA waiver unenforceable, and remanded the case to the trial court "to compel plaintiff Piplack's individual PAGA claim to arbitration . . . ." *Id*. at 1293.

Applying these interpretations here, the court concludes that the invalidity of the PAGA waiver does not invalidate the entire MDAA. Instead, plaintiff's individual and non-individual PAGA claims are severable from each other pursuant to *Viking River*, the individual claim must be compelled to arbitration under Section 9.4 while the non-individual claim must be litigated in court pursuant to Section 9.1(c), and the remainder of the MDAA remains valid pursuant to the severability provision in Section 10. *See Viking River Cruises, Inc.*, 596 U.S. at 662 (noting that the severability clause "provide[d] that if the waiver provision is invalid in some respect, any 'portion' of the waiver that remains valid must still be 'enforced in arbitration'" and reasoning that the employer was entitled to enforce its employment agreement insofar as it mandated arbitration of the employee's individual PAGA claim); *Britt on behalf of California v. Lennar Corp*., 732 F. Supp. 3d 1220, 1234 (E.D. Cal. 2024) (finding that the contract's reformation clause was sufficiently analogous to the severability clause in *Viking River* as to warrant the same result).

**D.     Class Action Waiver**

Defendant argues that this court should dismiss plaintiff's class claims because pursuant to the MDAA, he agreed to arbitrate his claims on an individual basis only. (Doc. No. 18-1 at 15–17.) An arbitration agreement may contain an enforceable waiver that waives the right to initiate or participate in a class action. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011). Here, the terms of the MDAA require an employee "to bring any dispute in arbitration on an individual basis only." (Doc. No. 18-2 at 7.) Plaintiff expressly waived the right to initiate or participate in any class action. (*Id.*) Apart from his arguments concerning inconsistency in the MDAA as to delegation, plaintiff does not contend that the class action waiver is inapplicable or

17

1  unenforceable.  In addition, the court has already concluded that any such challenges would be for
2  this court to decide.  Therefore, the court will give effect to the MDAA's class action waiver and
3  dismiss plaintiff's putative class claims.  *See Concepcion*, 563 U.S. at 351; *Marshall v. GrubHub*
4  *Inc.*, No. 24-cv-01218-JGB-DTB, 2025 WL 2427981, at *4–6 (C.D. Cal. May 16, 2025) (finding
5  that the parties had agreed to arbitrate their dispute, that the plaintiff had failed to show that the
6  delegation clause in the arbitration agreement at issue was unconscionable, and that it was
7  appropriate to dismiss the plaintiff's putative class claims pursuant to the agreement's waiver
8  provision); *Tercero*, 2025 WL 43125, at *13 (giving "effect to the Arbitration Agreement's class
9  action waiver and dismiss[ing] all of Plaintiff's putative class claims"); *Davtian v. Uber Techs.*,
10 *Inc.*, No. 24-cv-05195-CRB, 2024 WL 4681590, at *5–6 (N.D. Cal. Nov. 4, 2024) (finding that
11 arbitrability was delegated to the arbitrator but the "class action waivers here provide that the
12 Court should decide their validity," and subsequently dismissing the plaintiff's class claims); *see*
13 *also Montes v. Capstone Logistics, LLC*, No. 1:24-cv-01485-SAB, 2025 WL 2505561, at *11
14 (E.D. Cal. Sept. 2, 2025) ("Other than arguing the Agreement as a whole is unconscionable,
15 Plaintiff does not address Defendants' request to enforce the class waiver, nor does she argue that
16 the waiver is unenforceable.  Accordingly, the Court recommends giving effect to the
17 Agreement's class waiver provision and dismissing Plaintiff's putative class claims.").

18 **E.     Stay Pending Arbitration**

19        Defendant requests that this court stay plaintiff's non-individual PAGA claim pending the
20 completion of arbitration.  (Doc. No. 18-1 at 20–21.)  Plaintiff does not address defendant's stay
21 request in his opposition or argue that this court should proceed with a non-individual PAGA
22 action while the parties contemporaneously arbitrate plaintiff's individual PAGA claim.

23        In *Adolph v. Uber Techs., Inc.*, 14 Cal. 5th 1104 (2023), the California Supreme Court
24 held that PAGA claims may be bifurcated into individual claims subject to arbitration and
25 representative claims subject to litigation in court.  *Id.* at 1123.  When the defendant in *Adolph*
26 expressed concern that bifurcation would allow a plaintiff to relitigate issues in court that had
27 been decided by the arbitrator, the court explained that this problem could be avoided by staying
28 the representative PAGA claims at the court's discretion.  *Id.* at 1124.  Since this decision, several

1  district courts in California have adopted this procedure and observed that it "facilitates orderly
2  enforcement of the Labor Code and does not undermine any associated public policy." *Shugars*
3  *v. Walmart Inc.*, No. 24-cv-02765-EKL, 2025 WL 786348, at *8 (N.D. Cal. Mar. 12, 2025); *see*
4  *also Montes*, 2025 WL 2505561, at *10; *Diaz v. Nordstrom, Inc.*, No. 2:24-cv-04670-JAK-MAR,
5  2024 WL 5516282, at *7 (C.D. Cal. Nov. 25, 2024). Given the possibility that the arbitration of
6  plaintiff's claims may result in a determination that could affect the viability or scope of his non-
7  individual PAGA claim, and in an effort to promote judicial economy, the court finds a stay of
8  plaintiff's non-individual PAGA claim pending the completion of arbitration to be appropriate.

## CONCLUSION

For the reasons explained above:

1. Defendant's request for judicial notice (Doc. No. 19) is DENIED;
2. Plaintiff's request for judicial notice (Doc. No. 22-3) is DENIED;
3. Defendant's motion to compel arbitration (Doc. No. 18) is GRANTED and plaintiff's individual claims are compelled to arbitration, where the arbitrator shall determine threshold questions of arbitrability;
4. Plaintiff's putative class claims are DISMISSED without prejudice;
5. Plaintiff's non-individual PAGA claim is STAYED pending the resolution of arbitration;
6. Plaintiff and defendant are required to notify the court that arbitration proceedings have concluded within fourteen (14) days of the issuance of the arbitrator's decision; and
7. Because the action is now stayed pending the completion of arbitration, all currently calendared dates in this case are VACATED.

IT IS SO ORDERED.

Dated:   **September 23, 2025**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE